UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 20-9899 JGB (KKx)** | Date | January 26, 2022 |
| Title | *Word Aflame Tabernacle, Inc. et al. v. City of La Habra Heights et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART AND DENYING-IN-PART Defendants City of La Habra Heights and Fabiola Huerta's Motion to Dismiss (Dkt. No. 88); (2) DENYING AS MOOT Defendants City of La Habra Heights and Fabiola Huerta's Motion to Strike (Dkt. No. 88); and (3) VACATING the January 31, 2022 Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as well as a Motion to Strike, filed by Defendants City of La Habra Heights (the "City") and Fabiola Huerta (collectively, "City Defendants"). ("Motions," Dkt. No. 88.) The Court determines these matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motions, the Court GRANTS-IN-PART and DENIES-IN-PART the Motions to Dismiss and DENIES AS MOOT the Motion to Strike. The January 31, 2022 hearing is VACATED.

### I. BACKGROUND

On October 28, 2020, Plaintiffs Word Aflame Tabernacle, Inc. (the "Church"), Pastor Joe Garcia ("Pastor Joe Garcia"), and Marie Garcia ("Mrs. Garcia") filed a complaint against Defendants Huerta, the City, and Juan Garcia (collectively, "Defendants"). ("Complaint," Dkt. No. 1.)

On October 12, 2021, Plaintiffs Word Aflame, Pastor Joe Garcia, Mrs. Garcia, and Stephen Garcia ("Pastor Garcia," and collectively, "Plaintiffs") filed a Third Amendment Complaint. ("TAC," Dkt. No. 79.) The TAC alleges nine causes of action: (1) violation of the right to free exercise of religion under the First Amendment; (2) violation of the right to

assembly under the First Amendment; (3) violation of the right to freedom of speech under the First Amendment; (4) Equal Protection violation under the Fourteenth Amendment; (5) noise ordinance's void for vagueness under the Fourteenth Amendment; (6) noise ordinance's void for overbreadth under the First Amendment; (7) prior restraint in violation of the First Amendment; (8) Monell claim for unconstitutional policies and practices; and (9) violation of the Bane Act.

On November 5, 2021, City Defendants filed the corrected instant Motions. Plaintiffs opposed on November 22, 2021 ("Opposition," Dkt. No. 97), and City Defendants replied on November 29, 2021 ("Reply," Dkt. No. 101).

## II.   FACTUAL ALLEGATONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this motion.

The Church is located in La Habra Heights and rents a church building owned by Hillcrest Congregational Church ("Hillcrest"). (TAC ¶ 7.) Pastor Garcia is the Church's lead pastor, and Mrs. Garcia is his wife and a senior Church administrator. (Id. ¶ 10.)

Since March 2020, in transitioning to outdoor services due to COVID-19 public health orders, the Church purchased outdoor tents, rented chairs, and spent hours planning for its services. (Id. ¶¶ 20, 21.) The Church also purchased a decibel reader to record its noise level during worship services. (Id. ¶ 22.) During these services, the decibel reader remained between 50 to 60. (Id.)

At Defendants' behest, both the Los Angeles Sherriff's Department and the Los Angeles Department of Public Health visited the Church several times and found that it complied with relevant laws. (Id. ¶¶ 32, 33, 40.) On December 6, 2020, because of Defendants' continued complaints against the Church, the Sherriff's Department informed Plaintiffs of their rights as victims. (Id. ¶ 81.)

In July 2020, after Plaintiffs moved their worship services outside to comply with the COVID-19 health orders, Defendant Juan Garcia began yelling at church ushers and members and began recording and photographing church members. (Id. ¶¶ 2, 35.) Juan's surveillance made congregants uncomfortable, and parents had their children run out of their cars to avoid being photographed or recorded by him. (Id. ¶ 35.)

Plaintiffs allege that Juan was acting as an informant and agent of the City and conspired with City Defendants to shut down the Church because of his personal animus towards it. (Id. ¶ 36.) Plaintiffs also allege that Huerta ratified Juan's conduct, as illustrated in an email exchange to Juan, where she encouraged him to "continue to send [her] the information on when the congregation is violating the City's noise ordinance [the "Noise Ordinance"], [so] we can continue to build our case against them." (Id. ¶ 37.)

On or about August 20, 2020, Juan began emailing City Defendants to provide insider information about the Church's activities. (Id. ¶ 38.) City Defendants relied on Juan's investigatory findings to cite the Church and did not conduct their own independent investigations. (Id.) On September 3, 2020, Huerta told Pastor Garcia and Mrs. Garcia that City Defendants would continue to issue citations so long as Juan submitted noise complaints, even though Juan conceded to Huerta that the Church's gatherings were not "overly noisy." (Id. ¶¶ 45, 50.) Assistant City Manager Rafferty Wooldridge, as ratified by Fabiola Huerta, sent citations to the Church for violating the Noise Ordinance. (Id. ¶¶ 44-49.) City Defendants have levied $3,000 in fines against the Church. (Id. ¶ 51.)

On September 27, 2020, Pastor Garcia saw Juan standing on his balcony watching the Church's activity. (Id. ¶ 54.) Shortly after, Pastor Garcia saw two signs on the doors leading to the children's ministry, which is directly in front of Juan's balcony. (Id.) The letters stated something along the lines of the following:

> Joann Demas and Father were shot because they tried to stop torture from a brother's sister on a world order call…police still won't give me my guns back so more death…I'm bound by treaty and oath…I can't move the line myself…they are wait[ing] on the people 8 yrs later…28-34 yrs later no completion on those bound by oath….

(Id.) Upon seeing these letters, Pastor Garcia feared for his safety and the safety of his congregants. (Id. ¶ 55.) Because the letter was placed on the doors leading to the children's ministry, Pastor Garcia believed that Juan wrote the letters and that they represented an "oath to bring death to the Church and children . . . ." (Id.) Pastor Garcia called his mother and prompted her to call the police. (Id. ¶ 56.) He then instructed a Church usher to call a Church friend and military veteran to provide security. (Id.) The following week, the Church cancelled Sunday services, fearing potential deadly threats. (Id. ¶ 60.)

Since these events, several members have left the Church because they have felt unsafe or were unable to focus on Church service. (Id. ¶ 83.) The Church has had to hire and pay for security guards to protect its congregation. (Id. ¶ 85.) The Church also limited its services and events based on Defendants' alleged threats, intimidation, and harassment. (Id. ¶ 86.) The Church's limited services and decline in membership have "financial[ly] damage[d]" the Church. (Id.)

In August 2020, City Defendants fined the Church twice for allegedly violating the Noise Ordinance. (Id. ¶ 44.) City Defendants did not issue citations to any other business hosting live events or to any other church holding outdoor worship services with amplified music since the start of the COVID-19 pandemic. (Id. ¶ 5.)

### III. REQUEST FOR JUDICIAL NOTICE

Plaintiffs request judicial notice of the City's noise ordinance. The Court DENIES as moot this request because the Court "did not find the document necessary for resolving the

issues and thus did not rely on its contents." See Moore v. Rodriguez, 2021 WL 2222590, at *23 (S.D. Cal. June 2, 2021).

## IV.   LEGAL STANDARD

### A.  Motion to Dismiss Under 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction, without which a federal district court cannot adjudicate the case before it. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994).  Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Sierra v. Dep't. of Family and Children Servs., 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2016) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)).  Thus, a jurisdictional challenge can be either facial or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

In a facial attack, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  When evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, 644 F.Supp. 2d 1177, 1189 (N.D. Cal. 2009).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039.  In resolving a factual challenge, the court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" Warren, 328 F.3d at 1139 (quoting Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

### B.  Motion to Dismiss Under 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15–05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C.  Anti-SLAPP Motion to Strike

California's so-called anti-SLAPP law allows a defendant to file a special motion to strike certain claims that arise "from any act of [the defendant] in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b).  Although it is not a federal rule or law, the Ninth Circuit has held that "California's anti-SLAPP statute . . . supplements rather than conflicts with the Federal Rules."  Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1182 (9th Cir. 2013).

Under California law, courts deciding an anti-SLAPP motion to strike must engage in a two-step process.  Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).  First, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  Id.  Second, "[i]f the court finds such as showing has been made, it then determines whether the plaintiff has demonstrated probability of prevailing on the claim."  Id.  The Ninth Circuit has adopted this process.  See Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2010).

### D.  Monell Claims

Section 1983 creates a cause of action against any person who, while acting under color of state law, causes another to be deprived of a federally protected constitutional right.  42 U.S.C. § 1983.  Claims that law enforcement officers have used excessive force are generally Fourth Amendment claims, and are thus "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."  Graham v. Connor, 490 U.S. 386, 388 (1989).

However, under Section 1893, "local governments are responsible only for 'their own illegal acts.'" Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Vicarious liability does not attach. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-695 (1978)). Under Monell, liability attaches to a municipality or other local government only where "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." 436 U.S. at 692.

"Although a constitutional violation must result from 'official municipal policy,' such a policy need not be expressly adopted by a municipality. It is sufficient that the constitutional violation occurred pursuant to a 'longstanding practice or custom.' " Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (internal citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). A claim may also be based on a "policy of inaction," including "failure to implement procedural safeguards to prevent constitutional violations"; but to make this showing, the plaintiff must show—in addition to a constitutional violation—that the policy of inaction amounted to "deliberate indifference" to the plaintiff's constitutional right. Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012); see also Long v. Cty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (an unconstitutional policy "can be one of action or inaction").

### E. Leave to Amend

Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citation omitted).

## V.   DISCUSSION

### A. Motion to Dismiss for Lack of Standing Under 12(b)(1)

The basic threshold issue here is that City Defendants assert that the Court lacks subject matter jurisdiction. (Motion at 25, 26.) "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, the Court must address any jurisdiction questions first, before reaching the merits of a motion or case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998). The Court therefore first considers whether it has jurisdiction to adjudicate City Defendants' motions. The Court construes City Defendants' attack on its jurisdiction as a motion under Federal Rule of Civil Procedure 12(b)(1). (See Motion at 18, 19.)

Plaintiffs' federal constitutional claims challenge the constitutionality of the Noise Ordinance and allege that City Defendants, in concert with others, treated Plaintiffs

discriminatorily pursuant to that ordinance. (See Opposition at 15.) City Defendants, however, argue that Plaintiffs lack standing because the Noise Ordinance "was not enforced" against Plaintiffs. (Motion at 25.) City Defendants assert that the letters, citations, and fines at issue were instead addressed to and assessed on Hillcrest Congregation Church—"the property owner and a third party" to this litigation. (Id. at 25, 26.) Thus, Plaintiffs themselves have suffered no harm due to the City's enforcement of the Noise Ordinance, according to City Defendants. (Motion at 26.)

Plaintiffs, on the other hand, contend that the letters and fines were addressed to Hillcrest simply because the Church leases out Hillcrest's building for its services, and City Defendants had no other address to send the letters and fines. (Opposition at 8, 9.) Thus, Plaintiffs state they were injured because they "paid $1,200 of the fines" levied against the Church (id. at 9): "The City has levied over $3,000 in fines against the Church, and the Plaintiffs have paid $1,200 of those fines." (TAC ¶ 51.)

City Defendants contend that Plaintiffs' own documentary evidence contradicts their allegation that $3,000 in fines were levied against the Church for noise violations and that Plaintiffs had to pay $1,200 of those fines. (Reply at 8.) It is true that Plaintiffs' own evidence—particularly, a letter, Notice of Violation, and two citations—shows that the fines were issued to and assessed on Hillcrest, not Plaintiffs. (See TAC Exs. F, G, I; Reply at 8, 9.) Moreover, none of the letters or fines mention Plaintiffs' names. (Id.) City Defendants thus argue that "Plaintiffs are not entitled to the inference that Plaintiffs themselves were cited or fined." (Reply at 8.) In support, City Defendants cite Steckman v. Hart Brewing, Inc., which holds that a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." 143 F.3d 1293, 1295-96 (9th Cir. 1998).

However, no evidence contradicts Plaintiffs' factual assertion that they "paid $1,200 of [the] fines." (TAC ¶ 51.) The Court reasonably infers that Plaintiffs paid fines levied against Hillcrest since Plaintiffs' services allegedly violated the Noise Ordinance. See Moss v. U.S. Secret Service, 572 F.3d 962, 969 (2009) (holding that only "non-conclusory 'factual content,' and reasonable inferences from that content" are relevant considerations). Although it is not alleged in the TAC, it is reasonable to infer, for example, that Hillcrest demanded Plaintiffs pay the fines since they were the ones generating noise. Although City Defendants claim that "[t]he City's issue with noise ordinance violations is and always has been with property owners"—in this case, Hillcrest—the citations issued to Hillcrest have both the "Property Owner" and "Tenant" boxes checked off, seemingly contradicting City Defendants' claim. (TAC Ex. G.) That suggests that the City did not know that Hillcrest was merely a property owner whose activity was not at issue.

The Court therefore concludes that Plaintiffs have standing to bring their constitutional claims because (1) Plaintiffs' injury stems from the fines paid due to the City's citations issued to Hillcrest; (2) this injury is fairly traceable to the challenged action of City Defendants because Plaintiffs would not have paid the fines in the absence of the citations; and (3) it is likely that this injury will be redressed by a favorable decision.

Accordingly, the Court DENIES City Defendants' Motion to Dismiss under (12)(b)(1) to dismiss Plaintiffs' claims for lack of standing.

## B. Rule 12(b)(6) Motion to Dismiss

### 1. Huerta as a Redundant Defendant

City Defendants argue that Fabiola Huerta should be dismissed from all claims because claims against both an entity and a municipal official in her official capacity are necessarily duplicative and subject to strike. (Reply at 11.) Indeed, "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity." Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." Id. Here, in all claims, Plaintiffs sue (1) the City of La Habra Heights and (2) Fabiola Huerta in her official capacity as City Manager for La Habra Heights. (TAC ¶ 12 ("Huerta is . . . sued in her official capacity"); Opposition at 10 ("Plaintiffs are suing [Huerta] in her official capacity . . . .").) Huerta is thus a dismissible redundant defendant.

The Court therefore DISMISSES with prejudice Huerta as a defendant from all of Plaintiffs' claims. Accordingly, because City Defendants' anti-SLAPP motion primarily seeks to strike causes of actions and allegations concerning activity by Huerta (see, e.g., Motion at 4, 5), the Court DENIES the anti-SLAPP motion as moot with respect to all of Plaintiffs' claim.

### 2. Statute of Limitations

Plaintiffs bring facial and as-applied challenges to the Noise Ordinance. City Defendants argue that Plaintiffs' facial challenges are time-barred because the two-year statute of limitations under 42 U.S.C. § 1983 applies to the constitutional challenge of a noise ordinance and begins accruing on the date of the ordinance's enactment. (Motion at 26, 26 n.5, 26 n.6, 27; Reply at 11.) For that proposition, City Defendants rely on Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1027 (9th Cir. 2007); however, Action Apartment "applies only in the context of injury to property." Scheer v. Kelly, 817 F.3d 1183, 1187 (9th Cir. 2016) (declining to extend Action Apartment's holding to all facial challenges to ordinances). Because injuries to property are not at issue here, the Court DENIES City Defendants' Motion to Dismiss with respect to the statute of limitations defense.

### 3. Failure to State a Claim

As to each cause of action, City Defendants use the same conclusory language to argue that Plaintiffs fail to state a claim:

> Plaintiffs have failed to state a claim against Defendants upon which relief can be granted because there are insufficient allegations that the actions or omissions by Huerta or the City [] satisfy the elements of this cause of action.

(Motion at 2-4.) In support, City Defendants offer arguments, addressed above, involving Huerta (now dismissed), standing, and statute of limitations. (See Motion 24-27; Reply at 8, 9, 11.) City Defendants also assert that "Plaintiffs' allegations concerning 'harassment' and 'surveillance' are not actionable" because City Defendants did not engage in illegal behavior. (Reply at 10.)

However, City Defendants fail to specifically address how each cause of action fails to state a claim, thereby preventing Plaintiffs the opportunity to oppose such arguments. Indeed, as Plaintiffs correctly identify, City Defendants do not "address the sufficiency of Plaintiffs' claims, or the elements pled by Plaintiffs" in each cause of action. (Opposition at 1.) The Court declines to muster such arguments for City Defendants.

The Court therefore DENIES City Defendants' Motion to Dismiss under 12(b)(6) with respect to Plaintiffs' failure to state a claim.

## VI.   CONCLUSION

For the reasons above, the Court GRANTS-IN-PART and DENIES-IN-PART the Motions to Dismiss and DENIES AS MOOT the Motion to Strike. The January 31, 2022 hearing is VACATED.

**IT IS SO ORDERED.**